NOT RECOMMENDED FOR PUBLICATION

No. 22-5992

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 8, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Appellee, ) | |
| ) | ON APPEAL FROM THE UNITED |
| v. ) | STATES DISTRICT COURT FOR |
| ) | THE WESTERN DISTRICT OF |
| KEITH BRIAN HUNTER, ) | KENTUCKY |
| ) | |
| Defendant-Appellant. ) | |

O R D E R

Before: GIBBONS, GRIFFIN, and DAVIS, Circuit Judges.

Keith Brian Hunter appeals his conviction and sentence for tax evasion, in violation of 26 U.S.C. § 7201. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). For the reasons set forth below, we affirm.

In a superseding indictment, a grand jury charged Hunter, an attorney, with willfully attempting to evade approximately $1,124,620 in federal income taxes, penalties, and interest from the years 2000, 2001, 2002, 2006, 2008, and 2011. As affirmative acts, the government alleged that Hunter concealed assets by "storing personal income in a client escrow account [and] in a nominee bank account," "purchasing his home through a nominee, ostensibly as part of a charitable donation," "recycling cashier's checks and bonds," and "intentionally providing false and misleading information regarding his assets and income" during an Internal Revenue Service ("IRS") civil proceeding. In a bill of particulars that was amended twice before trial, the government provided additional details about the alleged affirmative acts. In relevant part, the bill of particulars stated that, in or around January 2011, Hunter "opened a client escrow account with PNC Bank, with account number ending in 0147" (the "PNC 0147 account") and used that account

"to hold personal income and to pay for personal expenses." The government alleged that Hunter deposited into the account $1,100,000 from a $1,288,895.66 payment for legal services that he received in January 2011 and "the entirety of the $140,000 in Hunter Hills, LLC, proceeds [he] received in or around January 2017 and other smaller checks from Hunter Hills, LLC," a real estate development company in which Hunter had a 50% interest. The government further alleged that Hunter used the account to process a $112,236.56 payment for legal services that he received in August 2011. As another affirmative act, the government alleged that, between January 2011 and 2019, Hunter "recycled cashier's checks, i.e., engaged in a cycle of purchasing cashier's checks, using a small portion of the initial cashier's check, then purchasing one or more cashier's checks of lesser value."

In its pretrial memorandum, the government notified Hunter that it intended to introduce certain documents and testimony that it believed were inextricably intertwined with the offense but that could otherwise be admitted under Federal Rule of Evidence 404(b), including (1) false statements made by Hunter in IRS filings; (2) evidence that the only other property owned by the non-profit entity Hunter used to purchase his house, "Through the Valley Foundation, Inc.," was "donated" by his stepmother, tending to show that the entity was not a legitimate charitable organization; (3) evidence that Hunter had unpaid tax deficiencies for 1996, 1997, 1998, and 1999 until 2018, when they were paid over his objection through an interpleader action; and (4) Hunter's general tax return filing history during the charged period. The district court denied Hunter's motion to exclude this evidence on the condition that the government lay a foundation to show the connection to the charged scheme.

The government presented evidence related to all the affirmative acts set forth in the superseding indictment, but the district court instructed the jury that only two of those acts occurred within the statute of limitations period—storing personal assets in a client escrow account and recycling cashier's checks and bonds. The court instructed the jury that, to find Hunter guilty, it must agree that he committed either or both of these acts on or after September 16, 2014. The jury returned a verdict of guilty.

Pursuant to Federal Rule of Criminal Procedure 29(c), Hunter moved to set aside the verdict and for a judgment of acquittal. He argued that the government failed to present sufficient evidence that the PNC 0147 account was a *client* escrow account as alleged in the indictment. He further argued that the district court erred by admitting evidence of affirmative acts that took place outside the statute of limitations and by failing to clearly instruct the jury on the distinction between affirmative acts taken in furtherance of the tax evasion charge and other bad acts introduced under Rule 404(b). The district court denied Hunter's motion. The court sentenced Hunter to 27 months' imprisonment to be followed by three years of supervised release.

Hunter raises six issues on appeal: (1) his conviction is not supported by sufficient evidence; (2) the government's evidence created a prejudicial variance from the superseding indictment's charge related to the use of a client escrow account; (3) the prosecutor engaged in misconduct by mischaracterizing his escrow account; (4) the government withheld evidence that the escrow account at issue was not an Interest on Lawyer Trust Account ("IOLTA account"), in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (5) the district court erred by admitting other bad acts evidence; and (6) the district court erred by applying a sophisticated-means enhancement at sentencing.

I. *Sufficiency of the Evidence*

When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). "[W]e may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

To sustain a conviction for tax evasion under § 7201, the government must prove "(1) a tax deficiency, (2) willfulness, and (3) an affirmative act of evasion or attempted evasion." *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 579 (6th Cir. 2002). Hunter does not dispute the existence of a tax deficiency.

As stated above, the affirmative acts of evasion that were alleged to have occurred within the statute of limitations period were Hunter's use of a client escrow account to conceal personal assets and his recycling of cashier's checks. Hunter first argues that the government failed to establish that he used a client escrow account to conceal personal assets because it did not prove that the PNC 0147 account was an IOLTA account. Hunter insists that, under Kentucky law, "the sole vehicle for attorneys to hold client funds is in an IOLTA account," and because the PNC 0147 account was not an IOLTA account, it was not a "client escrow account" as alleged in the superseding indictment.

Hunter is incorrect that IOLTA accounts are the only type of account for holding client funds. The Kentucky Rules of Professional Conduct require attorneys to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Ky. Sup. Ct. R. 3.130(1.15)(a). "Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated." *Id.* IOLTA accounts are one type of account in which such funds may be kept.[1] Under Kentucky Supreme Court Rule 3.830, "a lawyer or law firm shall create and maintain . . . an interest-bearing trust account for clients' funds which are nominal in amount or to be held for a short period of time so that they could not earn interest income for the client in excess of the costs incurred to secure such income." The rule specifies that "[n]o funds may be deposited in any IOLTA account when either the amount or the period of time that the funds are held would earn for the client interest above the costs that would otherwise be incurred to generate such interest." Ky. Sup. Ct. R. 3.830(1). In other words,

---

[1] Under a state's IOLTA program, "*certain* client funds held by an attorney in connection with his practice of law are deposited in bank accounts. The interest income generated by the funds is paid to foundations that finance legal services for low-income individuals." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 160 (1998) (emphasis added); *see also* Ky. Sup. Ct. R. 3.830(10).

if the amount of funds or the period of time over which the funds are to be held would earn the client interest in an amount greater than the costs incurred to hold the account, they must be held in a non-IOLTA client trust account. Thus, the fact that the PNC 0147 account was not designated as an IOLTA account does not mean that it was not a client escrow account as alleged in the superseding indictment. The relevant fact is that Hunter designated it as an escrow account.

The government produced sufficient evidence to show that the PNC 0147 account was a client escrow account that Hunter used to store his personal funds. As early as June 2000, Hunter owned an account at PNC Bank in the name of "Keith Hunter, Attorney at Law" and with an account number ending in 8190. On January 7, 2011, Hunter received a payment for legal services in the amount of $1,360,061.94 from the Zielke Law Firm. On the same day, Hunter opened the PNC 0147 account under his name with the label, "KEITH B. HUNTER, ATTY AT LAW, ESCROW ACCOUNT." On January 26, 2011, Hunter deposited $1,100,000 into the PNC 0147 account. In August 2011, Hunter processed a $112,236.56 payment for legal services from the Zielke Law Firm through the PNC 0147 account. In December 2016 and January 2017, Hunter deposited portions of payments from Hunter Hills, LLC, into the PNC 0147 account. Documents and testimony presented at trial established that Hunter used this account for personal expenses, including travel, dining out, and clothing. And records establish that Hunter deposited into this account multiple payments he had received from Hunter Hills after September 16, 2014.

IRS employee Christopher Giesin testified that an "attorney escrow account" is an account that is "set up . . . for the client's money . . . all the assets in the account[] are the attorney's client's." He explained that the IRS will not place a levy on an attorney escrow account "because it's not the taxpayer's money" and would cause hardship to the client. He testified that banks have confirmed that IRS levies will not attach to attorney escrow accounts. When asked about the significance of Hunter's PNC 0147 account being labeled as an escrow account, Giesin stated, "[T]hat's clients' money being held in trust into these accounts. That means that any of the funds in there are strictly the clients', and the attorney . . . [is] strictly the manager of the account." Viewed in the light most favorable to government, a rational trier of fact could infer from this

evidence that, by labeling the PNC 0147 account as an escrow account but using it to deposit personal funds and to pay personal expenses, Hunter held personal assets in the PNC 0147 account in an attempt to evade payment of his outstanding tax liability.

Hunter also argues that the government failed to present sufficient evidence that he acted with willful intent to evade payment of taxes by using the PNC 0147 escrow account for personal funds and by recycling cashier's checks. Hunter's tax preparer testified that, in late 2010, the IRS notified Hunter that he was being audited. Shortly thereafter, despite already having an account at PNC Bank, Hunter opened the PNC 0147 account and labeled it an escrow account. He began depositing personal funds into that account and using them for personal expenses. In late 2013, the IRS summoned Zielke Law Firm for information on how the firm paid Hunter. Shortly after the firm informed Hunter of the summons, the balance in the PNC 0147 account drastically dropped. And in January 2014, Hunter used a third party to open an account with his funds. Additionally, the IRS case agent who investigated Hunter's case testified that, during the course of the civil proceedings against Hunter, Hunter provided false and misleading information about his ownership interest in Hunter Hills, his ownership of his residence, and the value of his camera equipment. This evidence supports the finding that Hunter used the PNC 0147 account and recycled cashier's checks to willfully evade the payment of taxes.

## II. *Variance of the Indictment*

Next, Hunter argues that his conviction should be reversed because of a variance from the indictment. Specifically, Hunter asserts that "the indictment charged him with . . . using an IOLTA account to conceal assets and then presented evidence at trial regarding a regular escrow account." We review de novo whether there has been a variance from the indictment. *United States v. Hughes*, 505 F.3d 578, 587 (6th Cir. 2007). "A variance occurs when 'the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Beals*, 698 F.3d 248, 258 (6th Cir. 2012) (quoting *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008)). Because variances are not per se prejudicial, a conviction will be reversed only if "(1) a variance occurred and (2) the variance

affected the defendant's substantial rights." *United States v. Pritchett*, 749 F.3d 417, 428 (6th Cir. 2014). "The substantial rights of the defendant 'are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *United States v. Napier*, 787 F.3d 333, 350 (6th Cir. 2015) (quoting *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)).

Hunter's argument is based on the faulty premise that the only type of escrow account that can be used for client funds is an IOLTA account. As discussed above, IOLTA accounts are a specific type of escrow account that are reserved for client funds that are nominal amounts or are to be held for a short period of time. The indictment charged Hunter with "storing personal income in a client escrow account." It did not specify that he used an IOLTA account. The bill of particulars identified the account as "a client escrow account with PNC Bank, with account number ending in 0147." The government proved that Hunter opened the PNC 0147 account and labeled it as an escrow account, signaling to the IRS that no levy could attach to it because it contained client money. There was no variance from the indictment. And even if there were, Hunter's substantial rights were not affected because, as noted, the bill of particulars specified the account number.

III.    *Prosecutorial Misconduct*

For the first time on appeal, Hunter contends that "[t]he government's mischaracterization of his regular escrow account as an IOLTA account amounts to prosecutorial misconduct." Because Hunter did not object at trial, we review this claim for plain error. *See United States v. Jones*, 55 F.4th 496, 502 (6th Cir. 2022). This standard requires Hunter to show that (1) an error occurred, (2) the error was obvious or clear, (3) the error affected his substantial rights, and (4) "this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Collins*, 799 F.3d 554, 590–91 (6th Cir. 2015) (quoting *Untied States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)).

"[W]hen analyzing claims of prosecutorial misconduct, we follow a two-step framework. First, we decide whether the prosecutor's statements were improper enough to constitute plain

error. If they were, we then determine whether the statements were flagrant enough to affect the defendant's substantial rights." *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020) (internal citation omitted).

Hunter does not cite any point at trial where the prosecutor referred to the PNC 0147 account as an IOLTA account. Rather, he contends that, by referring to the PNC 0147 account as a client escrow account, the prosecutor was effectively calling it an IOLTA account. Hunter is mistaken. Again, his claim is premised on the incorrect assertion that an IOLTA account is the only type of escrow account in which client funds may be held. The prosecutor did not commit misconduct in the way it characterized the PNC 0147 account.

IV.   *Brady Violation*

Hunter's next argument is that the government withheld evidence that the PNC 0147 account was not an IOLTA account, in violation of *Brady*. Specifically, Hunter contends that the government failed to disclose the subpoena it served on the Kentucky Bar Association seeking records of Hunter's IOLTA accounts and the bar association's response, which indicated that Hunter did not have any IOLTA accounts. He argues that he could have used this evidence to prove that the PNC 0147 account was not a client escrow account. Hunter did not raise this claim below. And he now moves to supplement the record with these documents.[2]

To establish a *Brady* violation, a defendant must demonstrate that (1) the non-disclosed evidence is favorable to him, "either because it is exculpatory, or because it is impeaching"; (2) the evidence was suppressed "either willfully or inadvertently"; and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Hunter has failed to make this showing. Again, his claim is grounded in the faulty assertion that an escrow account can only be considered a client escrow account if it is an IOLTA account. And as the government notes, it never tried to prove that Hunter had an IOLTA account. The fact that Hunter did not have an IOLTA account in Kentucky has no bearing on whether he used the PNC 0147 account to evade the payment of taxes.

---

[2] Because these documents go to "the heart of Hunter's arguments on appeal," we will grant his motion to supplement the record.

Because the evidence has no exculpatory or impeachment value, the government's failure to turn it over to the defense did not violate *Brady*.

V.   Other Bad Acts Evidence

Hunter contends that "the district court erred by failing to properly rule on [his] motion to exclude evidence of prior bad acts." In its pre-trial memorandum, the government, out of an abundance of caution, notified Hunter that it intended to offer evidence that could be deemed other bad acts evidence under Federal Rule of Evidence 404(b), including evidence that Hunter had made false statements in IRS civil filings, that the only other property owned by Through the Valley Foundation was a property that had been "donated" by Hunter's stepmother, and that Hunter's unpaid tax deficiencies for 1996, 1997, 1998, and 1999 were only paid off in 2018 over Hunter's objection through an interpleader action, as well as evidence of Hunter's general tax return filing history during the charged period. The government, however, believed that the evidence was inextricably intertwined with the offense because it proved willfulness and was therefore not governed by Rule 404(b). Hunter moved to exclude the evidence. On the first day of trial, the district court denied Hunter's motion, finding that the evidence was inextricably intertwined with the offense, but advised Hunter that he could renew his motion or object as pieces of evidence were introduced. Hunter does not indicate that he did so.

Rule 404(b) provides in relevant part that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's the character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "Rule 404(b) 'does not apply to evidence that itself is probative of the crime charged[.]'" *United States v. Sumlin*, 956 F.3d 879, 889 (6th Cir. 2020) (alteration in original) (quoting *United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003)). "That is, if evidence is 'intrinsic,' Rule 404(b) will not apply as long as the acts 'are part of a single criminal episode.'" *United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022) (quoting *United States v. Adams*, 722 F.3d 788, 822 (6th Cir. 2013)). In other words, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). "A similar but

distinct doctrine involves an exception to Rule 404(b) for *res gestae*, or background, evidence. Such evidence consists of those other acts that are inextricably intertwined with the charged offense." *Sadler*, 24 F.4th at 554 (internal citations and quotation marks omitted). We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009).

Because the evidence of Hunter's false statements to the IRS, his tax return-filing history during the relevant time, his objection to paying unpaid tax deficiencies through an interpleader action, and the legitimacy of the non-profit through which he purchased his home was probative of willfulness—an element of the charged offense—the district court did not abuse its discretion by finding that it was not subject to Rule 404(b) and admitting it.

VI. *Sophisticated-Means Enhancement*

Finally, Hunter appeals the district court's application of the sophisticated-means enhancement under U.S.S.G. § 2T1.1(b)(2). We have not resolved whether a district court's application of this enhancement is reviewed for clear error or de novo, *see United States v. Chappelle*, 78 F.4th 854, 862 (6th Cir 2023), and we need not do so here because Hunter's claim fails under either standard.

When assessing whether a tax-evasion scheme involved sophisticated means, we "do not look to the 'individual steps' of the scheme, but instead to 'the totality of the defendant's conduct.'" *United States v. Vysniauskas*, 593 F. App'x 518, 531 (6th Cir. 2015) (quoting *United States v. Masters*, 216 F. App'x 524, 526 (6th Cir. 2007)). The application notes to § 2T1.1 define "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2T1.1 cmt. n.5.

The presentence report applied the sophisticated-means enhancement because Hunter "stored personal income in a nominee bank account; purchased his home through a nominee; and recycled cashier's checks and bonds." At the sentencing hearing, the district court explained that the enhancement applied due to "the sheer number and variety of steps involved, the fact that this was a lawyer who took these steps, including aspects purportedly related to his law practice, [and]

the fact that it involved transactions with a nonprofit [and] the recycling of checks." We have upheld application of the sophisticated-means enhancement for similar conduct. *See, e.g. United States v. Clear*, 112 F. App'x 429, 431 (6th Cir. 2004) (upholding enhancement where defendant recycled cashier's checks through a family member and then deposited the checks in a warehouse bank, which identifies accounts through arbitrary numbers rather than a depositor's name); *United States v. Morris*, 3 F. App'x 223, 226 (6th Cir. 2001) (finding that defendant's use of two nominee trusts to conceal his income and assets was "more than sufficient" to warrant the enhancement). Here, Hunter used multiple tactics to conceal his income from the IRS. "This was not a case of an individual who simply lied on a 1040 form." *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir. 1994). Considering Hunter's conduct in totality, we find no error in the district court's application of the sophisticated-means enhancement.

For these reasons, we **GRANT** Hunter's motion to supplement the record and **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk